```
        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MARYLAND
```

|  |  |
|---|---|
| CLIFTON BELLAMY | : |
|  | : |
| v. | : Civil Action No. DKC 20-1352 |
|  | : |
| WALMART, INC., et al. | : |
|  | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination suit is a motion to dismiss. (ECF No. 11). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

**I.   Background**

Unless otherwise noted, the facts outlined here are set forth in Plaintiff's administrative and federal complaints and construed in the light most favorable to Plaintiff. Plaintiff Clifton Bellamy is a Maryland resident and former employee of Defendant Walmart, Inc. ("Walmart"). At the time in question, he worked at Defendant "Walmart Store #1717" and under supervisor Defendant Jessica Wagner.[1] He asserts that from June 2017 to January 2018

---

[1] Walmart argues that Walmart Store 1717 is not a corporate entity and contends that Ms. Wagner was not properly served. In addition, it argues that neither party is properly joined in this action, particularly Ms. Wagner as Title VII "limits civil liability solely to employers" and has "rejected individual

(his "entire time at this store"), he was "mistreated as an employee for standing up for myself and others." In October 2017 specifically,[2] Mr. Bellamy reports that he had a "verbal altercation" with his "overnight supervisor" Ms. Wagner. He alleges the argument began when she told him to do something "against store policy," but he refused. Ms. Wagner is alleged to have then told Plaintiff, "You just need to do what you are told," among other things, and that "you will never be successful in anything you do[,] and I will see to it that you will never be successful in this company." He argues this scene unfolded in front of numerous fellow employees.

More generally, he says his employer was constantly reprimanding him and that he was "written up" or sent home for minor infractions which he claims other fellow employees "were allowed to partake in or get away with." On two occasions, in fact, he argues he was "wrongfully terminated" and had to "go through the open door policy" to have these terminations

---

liability under . . . federal EEO laws."  (ECF No. 11-1, at 8) (quoting *Moody v. Arc of Howard Cnty., Inc.*, No. JKB-09-3228, 2011 WL 2671385, at *4 (D.Md. July 7, 2011), *aff'd*, 474 F. App'x 947 (4th Cir. 2012) and collecting cases).  As discussed more fully below, Plaintiff has failed to exhaust his administrative remedies as to any Defendants, so this argument need not be addressed, although it is well taken.

[2] Plaintiff clarifies in his unsigned opposition that the statement in the complaint that this event occurred on "October 2018," was merely a typo.  (ECF No. 16, at 3); (*see also* ECF No. 11-1, at 2 n.3).

2

overturned.[3]  Finally, on January 25, 2018, Mr. Bellamy states he was terminated, and without recourse to the "open door policy," two weeks after he "accidentally" broke a sign that he asserts was already broken.  He alleges that there was at least one witness to this incident,[4] and that either this or another co-worker told him that his manager "Andre" said afterward, "I can[]not stand him and I'm going to see to it that he gets out of here."  This same manager, Plaintiff asserts, also commented after his termination that his firing was "for good this time" and that he would ensure he would be denied unemployment.  (ECF No. 1-1, at 2).

## II.  Procedural History

Subsequently, Mr. Bellamy filled out a "Pre-Charge Inquiry" with the U.S. Equal Employment Opportunity Commission ("EEOC") that reports discrimination, but when asked "I think I was discriminated against because of," Plaintiff did not check "Race," "Color," "Religion," "Sex," "National origin," "Age," or "Disability."  Instead he checked only "Retaliation," and underneath he checked the boxes for "I complained to my employer about job discrimination" and "I helped or was a witness in someone

---

[3] It is not clear what this process entails, however, or what protections it affords Walmart employees.

[4] Plaintiff attaches a handwritten statement to his complaint that appears to be from this individual who reports that the breaking of the sign was not intentional.  (ECF No. 1-1, at 10). It is not entirely legible, however.

3

else's complaint about job discrimination." There is no expanded discussion of these purported protected activities, however. Instead where the complaint form asks what happened to him that he felt was discriminatory, he reported the "verbal altercation" with his supervisor. (ECF No. 1-1, at 4-5). His actual "Charge of Discrimination" (the "EEOC Complaint"), does not check *any* boxes (including retaliation) in response to the question "Why you think you were discriminated against?" He does, however, attach a write-up to the EEOC Complaint that adds more color to the alleged "altercation" with his supervisor and the other complained of conduct detailed above. (ECF No. 1-1, at 2).

After receiving a "Dismissal and Notice of Rights" from the EEOC ("Right to Sue" letter) in which the EEOC states it was "unable" to conclude a violation had occurred, Plaintiff brought a complaint in this court. It alleges discrimination pursuant to Title VII of the Civil Rights Act of 1965 ("Title VII"). When asked to explain the "discriminatory conduct" complained of, Mr. Bellamy checked the boxes for "Termination of my employment," "Retaliation," and "[H]arassment." He alleges this conduct generally took place between June 2017 and January 2018, as well as in particular incidents on August 22, 2017,[5] and January 25,

---

[5] A handwritten note from a "Yolanda Richardson" reports that on August 22 around 10:45 p.m. she witnessed "Cliff the employee and Jess the store night asst. manager" get into an argument. She says Jess was shouting that she "want[ed] all the items done," but

4

2018.  Mr. Bellamy now contends that Walmart discriminated against him because of his "race" and "gender/sex."  His prayer for relief requests "$1 million dollars for wrongful termination, harassment and discrimination."  (ECF No. 1).

   Defendant subsequently filed a motion to dismiss for failure to state a claim.  (ECF No. 11).  That same day notice was sent to Mr. Bellamy that a failure adequately to respond might be fatal to his complaint.  (ECF No. 12).  Twenty days later, Plaintiff filed an opposition, but it was unsigned.  (ECF No. 16).  The next day, on September 25, 2020, an order went out directing the Clerk to mail Mr. Bellamy a copy of his unsigned response and granting him fourteen days to re-file it signed.  (ECF No. 17).  Plaintiff has not done so, and Defendant's subsequent reply urges that Mr. Bellamy's response be stricken and his entire complaint be dismissed with prejudice as this failure constitutes "abandonment."  (ECF No. 18).  Because the complaint will be dismissed because Plaintiff failed to exhaust his administrative remedies, even when the contents of the unsigned opposition are considered, such a step is unnecessary.

---

Mr. Bellamy responded that if his shift did not finish, the next one would.  According to this account, this is what prompted Ms. Wagner to say "That's why you will never be nothing in life. You will never amount to nothing."  If this is the same incident highlighted in the EEOC complaint, this contradicts his assertion that this confrontation took place in October.

**III. Standard of Review**

Defendant invokes Fed.R.Civ.P. 12(b)(1) and argues that a failure to exhaust "deprives the federal courts of subject matter jurisdiction." But its arguments concerning exhaustion of administrative remedies are more properly claims that Plaintiff failed to allege the "essential ingredients of a federal claim of relief," and thus do not challenge subject matter jurisdiction.[6]

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the

---

[6] *See Johnson v. Md. Dep't of Labor, Licensing, and Regul.*, 386 F.Supp.3d 608, 613 n.1, (D.Md. 2019); *see also Fort Bend Cty., Tx. V. Davis*, 139 S.Ct. 1843, 1846 (2019) (abrogating *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (insofar as Title VII's "charge-filing instruction is not jurisdictional")).

6

pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. Analysis

Walmart argues that Mr. Bellamy has not exhausted his administrative remedies for at least two reasons.

First, Mr. Bellamy's original complaint with the EEOC alleges his January 25, 2018, termination was the culmination of the purported discrimination against him. In order to be timely, Mr. Bellamy had 300 days from this "last alleged discriminatory act" to file a timely EEOC Charge. (ECF No. 11-1, at 6) (citing 42 U.S.C. § 2000e-5(e)(1) and *EEOC v Randstad*, 765 F. Supp. 2d 734, 739 & n.1 (D. Md. 2011), *rev'd on other grounds by* 685 F.3d 433 (4th Cir. 2012)). Nor can the retaliation claim be based on or revived by framing the EEOC complaint itself as a protected activity, as this complaint was made well after his termination. This makes November 21, 2018, the last day on which Plaintiff could file with the EEOC regarding this or any earlier conduct by Walmart. The "Charge of Discrimination" appended by Plaintiff, however, shows that Mr. Bellamy's complaint with the EEOC was signed on December 10, and he reports filing it on the 11th. (*See* ECF No. 1, at 6). Thus, the EEOC Charge was nearly three weeks

late, and Walmart argues that the entire complaint is time-barred. (ECF No. 11-1, at 6-7).

Second, Defendant argues that even if Plaintiff filed a timely complaint with the EEOC, he was required to bring his federal suit within ninety days of receipt of the Right to Sue letter. Walmart argues this is a hard-and-fast requirement that is not easily disregarded. (*Id.* at 11-1, at 7) (citing 42 U.S.C. § 2000e-5(f) and *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)). Mr. Bellamy states in his complaint that he received the Right to Sue letter on February 16, 2020. (ECF No. 1, at 6). Walmart concedes, however, that there is a handwritten note on the actual, appended Right to Sue letter, that it was received on March 1. (ECF No. 1-1, at 6). Even accepting this date as triggering this exhaustion requirement, Walmart argues, ninety days from this date is May 30, and Plaintiff did not file his federal complaint until June 1, a day later. (ECF No. 11-1, at 7).

The secondary alleged delay is ephemeral. March 1 was a Sunday and not likely the day of receipt. If it was, however, 90 days later was May 30, 2020, a Saturday. When the last day falls on a weekend, a party may file on the next business day, or June 1. Fed.R.Civ.P. 6(a)(1)(C). In fact, Plaintiff mailed his complaint on May 28 and it was delivered to the court on June 1. The suit was filed timely, if receipt of the Notice of Right to Sue was on March 1.

Plaintiff does not specifically address the timing of his actions, either with the EEOC or with this court. He does complain that he was forced to file his complaint *pro se* because of the costs associated with hiring an attorney and because COVID-19 adversely affected his ability to pay such a cost. (ECF No. 16, at 4). These realities fail to excuse his late filing with the EEOC back in November or December of 2018, well before the COVID-19 pandemic began. Having failed to complain of his ultimate termination in a timely fashion, Mr. Bellamy is also barred from the inclusion of any earlier, alleged misconduct by Walmart. With the complaint deficient on this threshold issue, Walmart's additional arguments — 1) that Mr. Bellamy did not exhaust his discrimination and harassment claims, and 2) that all his claims have otherwise failed to state a valid Title VII cause of action — need not be addressed. (*See* ECF No. 11-1, at 8-17). This defect is not curable, and so Plaintiff is not granted leave to re-file an amended complaint as to do so would be futile. Fed.R.Civ.P. 15.

## V. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendant Walmart will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge